Andrew J. Frisch
Partner

212-344-5400
afrisch@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

August 1, 2020

*By ECF and Email*
The Honorable Eric Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Aleksandr Zhukov, 18-CR-633 (EK)

Dear Judge Komitee:

On behalf of Aleksandr Zhukov in the above-referenced case, we submit this letter in response to the government's motions *in limine* seeking to admit evidence pursuant to Rule 404(b), preclude portions of Mr. Zhukov's post-arrest statement, and admit co-conspirators' statements.

Mr. Zhukov agrees with the government that statements made by co-conspirators to advance a conspiracy can be admissible, and that the government can seek to admit portions of a defendant's post-arrest statements subject to the Rule of Completeness. While we address these issues below, we believe that the Court would be best served by ruling on them later, upon consideration of and in the context of the government's opening statement, any opening statement made by Mr. Zhukov, and evidence adduced by the time of the relevant testimony.  The government does not argue that it would be unduly prejudiced if rulings on these issues were deferred until trial, nor could it so argue persuasively.  As for the evidence proffered pursuant to Rule 404(b), the government's motion should be denied for the reasons explained below.

    A.  *The Government's Proffered Bad Acts Are Inadmissible*

The government proffers what it calls the "Crawling Chat" as evidence of Mr. Zhukov's express acknowledgment in October 2012, two years before the indicted crime allegedly began in September 2014, that use of bots apparently to crawl for or obtain publicly-available sports odds or similar information (for use in a sports betting platform) is illegal.  *See* Gov't Memo at 11-12.  The basis for the government's proffer is an excerpt of a chat, contained in Exhibit B to government's memorandum, where Mr. Zhukov says "yes" immediately after the other chat participant says, "Is it illegal?"  The government, however, fails to excerpt or even mention *the very next line of the chat*, where Mr. Zhukov says "I don't know" (emphasis added):

| | |
|---|---|
| Alex Z | I have another question... since we're a startup and unable to spend 50K Euro a month for suppliers of sporting event live statistics, we're crawling those stats )) so here's the question... where should we locate this crawler server? at the same place? or somewhere else? we've been crawling for six months already... carefully, without excessive effort from different bookmaker and live sites... there've been no issues... but anyway it's better to clarify and ask in advance |
| ▮▮▮ | that's out of my wheelhouse |
| ▮▮▮ | what's crawling? |
| ▮▮▮ | you just read the data |
| Alex Z | the bot collects the data |
| ▮▮▮ | is it illegal? |
| Alex Z | Yes |
| Alex Z | I don't know |

This *complete excerpt* of the proffered chat permits either of two inferences, neither of which supports the government's proffer. *First*, Mr. Zhukov's "yes" and "I don't know" could be read together as two related expressions of Mr. Zhukov's equivocation and uncertainty as to whether use of a bot to crawl for and collect the subject data is illegal. *Second*, and perhaps more likely, Mr. Zhukov's "yes" responded to the questioner's inquiry about crawling, and his "I don't know" responded to the questioner's subsequent inquiry about legality. Either way, the chat has virtually no probative value and risks substantial undue prejudice.

Apart from Mr. Zhukov's expressed equivocation and uncertainty about legality, the chat relates not to use of bots to replicate human Internet users to defraud advertisers as Mr. Zhukov is charged (or anything similar), but, apparently, use of bots to expedite what a person could otherwise do legally and manually, albeit with greater investment of time and effort: visit websites and copy-and-paste or otherwise obtain information. The proffered act is thus not "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence." See *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994).

Even a defendant's *unequivocal* legal conclusion, especially here as to conduct dissimilar from the charged conduct, would create an inherent risk of confusion. *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 758 (2d Cir. 2004). If Mr. Zhukov at trial argues that he has always been technologically challenged with no idea about operation of the Internet, this chat might be admissible to show his computer literacy, but we do not expect that Mr. Zhukov will so claim. Otherwise, this chat has little or no apparent probative value and enormous potential for undue prejudice.

The government's proffer of the so-called "Money Laundering Chat" is likewise deficient. The government argues that this chat shows that Mr. Zhukov "had prior experience in concealing and transacting in stolen funds using multiple bank accounts in multiple countries and had the knowledge and preparation required to engage in such conduct again in connection with the charges scheme." Gov't Memo at 14. To the contrary, no bitcoins (stolen or otherwise) were provided by the chat's participant to Mr. Zhukov as the result of the "Money Laundering Chat" or otherwise, and neither Mr. Zhukov nor anyone else took any action to liquidate or launder stolen bitcoins.

Even then, contrary to the government's proffer, Mr. Zhukov did not say that he himself had "prior experience" in disposing of stolen bitcoins, as the government claims.

Responding to the other chat participant's inquiry, Mr. Zhukov said that he had "friends who do all these bank[s] operations;" the "friends" would require a percentage for helping to liquidate stolen bitcoins; and they would pay Mr. Zhukov a percentage of their fee. Gov't Exhibit C at 2. Nothing came of this chat; neither Mr. Zhukov nor his "friends" ever received the bitcoins; no bitcoins were liquidated or otherwise laundered; and Mr. Zhukov received no profit or recompense.

The United States Supreme Court has held that "similar act evidence is relevant only if the jury can reasonably conclude *that the act occurred and that the defendant was the actor.*" *Huddleston v. United States*, 485 U.S. 681, 689 (1988) (emphasis added). The government cannot show that the act here occurred because it did not occur; the chat does not show what the government says it shows: Mr. Zhukov's "prior experience . . . in moving funds to conceal their origin." To the contrary, the proffered chat is a classic example of propensity: Mr. Zhukov once said he might participate in something bad so, according to the government, he must be guilty of the unrelated conduct with which he is charged. Rule 404(b) does not permit such evidence.

### B. *The Government's Proffer of Selected Portions of Mr. Zhukov's Post-arrest Statement Violates the Rule of Completeness*

The government asks that the Court rule *in limine* as to which portions of Mr. Zhukov's post-arrest statement it should be permitted to introduce without implicating the Rule of Completeness. While we address the government's arguments here, we propose that the Court permit more fulsome discussion at trial when the record is more developed.

The Rule of Completeness provides that, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. "Under this rule, the omitted portion of a statement must be placed in evidence if necessary, to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987).

The government's proffer here seeks to extract "fragments" from Mr. Zhukov's statement that ignores context and would mislead the jury, permit half-truths, and be unfair. *See Castro*, 823 F.2d at 573. For example, the government seeks to preclude Mr. Zhukov's statement that the traffic he sold was "low-quality." Gov't Memo at 6. But this statement is directly relevant to and provides context for the subsidiary portions which the government seeks to use. The statements which the government seeks to use cannot fairly be divorced from their context.

Thus, according to the government's report of Mr. Zhukov's statement, he used the term "bot" or "bots" on just a few occasions in his post-arrest statement, each time in the context of Mr. Zhukov's explanation of what he meant by "low quality traffic." The interview report at page 2 states that

> ZHUKOV explained that he was reselling what he called "low quality ad traffic," which he defined as a mixture of cheap pop-up ad traffic, including traffic generated by "bots," as well as real users. ZHUKOV inquired who the victims were if there was a crime.

Similarly, the report at page 3 states as follows:

> ZHUKOV inquired as to specifically who suffered losses in the METAN scheme and who the victims were. Before December 2016, advertisers and the rest of the industry were perfectly happy with the low quality ad traffic that ZHUKOV was buying and selling. Everyone knew it was low quality ad traffic with bots. Specifically, ZHUKOV states that, "Everybody gained money. Verta Media gained money, ALO gained money, I gained money." Everyone except Google bought low quality ad traffic, because Google had its own traffic. Eventually, ZHUKOV elaborated that even Google bought low quality bot traffic.

If Mr. Zhukov at trial claims to know nothing about bots, the government's proffer of an isolated contrary admission to rebut any claimed unfamiliarity with bots might not require context. But if the government chooses to use Mr. Zhukov's post-arrest statement affirmatively, the Rule of Completeness requires the basic fairness to which the government here turns a blind eye. The government's latitude to cherry-pick a defendant's statement does not permit it to pry an isolated admission from its exculpatory context. Otherwise, the government would be permitted to do exactly what the Second Circuit teaches is a violation of the Rule of Completeness: "admission of the statement in redacted form [which] distorts its meaning or excludes information substantially exculpatory of the declarant." *See United States v. Thiam*, 934 F.3d 89, 96 (2d Cir. 2019). Mr. Zhukov discussed bots as part of his discussion of low quality ad traffic. If the government wishes to introduce evidence of Mr. Zhukov's statement, it must be faithful to statement's intended and inextricable exculpating context, not present it in a vacuum as an unelaborated admission.

As for the government's motion for permission to excise parts of Mr. Zhukov's statement referring to co-conspirators, it is not clear exactly which specific portions of Mr. Zhukov's statements are the ones which the government seeks to admit and preclude. While the government's thematic interest in parsing Mr. Zhukov's post-arrest statement for incriminating inferences is clear, the specifics are murky. For example, the government says that it seeks to preclude Mr. Zhukov's statement that "his indicted co-conspirator Boris Timokhin and another individual were the ones responsible for

*conducting* the scheme" [Gov't Memo 6], but Mr. Zhuokv made no such statement as such. Rather than speculate as to which specific portions of the statement are the subject(s) of the government's motion, the Court's resolution of this motion may be facilitated if the government in reply specifies the statements which it seeks to admit and preclude so the parties can better address the issue at oral argument on the motion. The government's general approach to this part of its motion helps demonstrate the wisdom of reserving decision until the interviewing agent testifies, which presumably will be towards the end of the government's case, when the Court will have the benefit of a more developed record.

### C.  The Proffered Co-Conspirator Statements

As for the government's proffer of co-conspirator statements, Mr. Zhukov proposes that the Court rule in the context of the trial and hear any objections from Mr. Zhukov with the benefit a more developed record.

Respectfully submitted,

/s/ Andrew J. Frisch
Andrew J. Frisch

*Of Counsel:*
Abraham Rubert-Schewel
Dami Animashaun


cc:  All Counsel