

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:SK/JAM/AFM
F.#2016R02228

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 24, 2021

By Email and ECF

The Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Aleksandr Zhukov
            Criminal Docket No. 18-633 (S-1) (EK)

Dear Judge Komitee:

      The government writes in sur-reply to the defendant's reply brief of February 5, 2021, see ECF No. 228 (the "Reply"), and in further opposition to the defendant's motion to suppress of January 11, 2021 see ECF No. 205.

      This is a litigation about a single statement: the defendant's assertion as Bulgarian police searched his apartment that "All items belong to me." For the first time in his reply brief, the defendant asserts that the bare seven-line affidavit attached to his motion gives rise to an issue of material fact as to whether this search was a joint venture between U.S. and Bulgarian authorities. It does not, because the undisputed factual record demonstrates that the defendant was briefly interviewed by Bulgarian officers alone, without participation by the sole FBI agent present for the search, and the defendant's lengthy interview with the FBI took place subsequently at another location. Furthermore, the sole new evidentiary item raised in reply – the existence of a U.S. mutual legal assistance treaty ("MLAT") request from the United States – has no bearing on the question of whether a joint venture existed, contrary to the defendant's arguments. The defendant has not carried his burden and is not entitled to a hearing.

    A.    Factual Background

      The undisputed facts pertinent to this motion are as follows:[1] in November 2018, Bulgarian authorities received a treaty request from the United States to, among other things,

---

[1]    A report produced by the judicially assigned Bulgarian investigator is attached hereto in translation as Exhibit A, and in the original as Exhibit B. The government has

search the defendant's apartment. The Bulgarian prosecutor's office reviewed the request, determined that providing assistance was appropriate, and in turn requested a search warrant from the district court in Bulgaria. Ex. A at 5. The duty district judge in Bulgaria independently reviewed the Bulgarian prosecutor's request, determined that the requested search was appropriate, and issued a Bulgarian search warrant. Ex. A at 7. On the morning of November 6, 2018, Bulgarian police searched the defendant's apartment. Bulgarian authorities produced a report regarding the search, and the report records that a single FBI agent was "present at the conducted search as an observer and without being part of its execution." Ex. A at 12. Under the heading "Explanations about the found and seized items," the report further records the defendant stating the following: "All items belong to me, with the exception of the LavAzza coffee metal box, which contains marijuana."[2] An image of the relevant portion of the translated report is shown below:

> Objections, notes and requests by the people present:
> There were none.
> Explanations about the found and seized items, documents, etc. /state who gives what explanations/ All items belong to me, with the exception of the LavAzza coffee metal box, which contains marijuana.
> A copy of this record was given to the individual:
> **Alexander Mihailovich Zhukov, PINF: 1003134626**
> Present at the conducted search as an observer and without being part of its execution was Evelina Aslanyan, special agent at the Federal Bureau of Investigation USA, Office New York. The search started at 08:00 am and concluded at 10:50 am.

The defendant has introduced no facts to the contrary.

The parties also do not dispute that following his arrest, the defendant was brought to a local police station, where he was given Miranda warnings and interviewed at length by FBI agents. The report of that interview, which the defendant has not sought to suppress, is attached under seal to the government's first motion in limine, and re-appended hereto under seal as Exhibit C. See ECF No. 95 (sealed attachment to ECF No. 94).

---

produced this report to defense counsel in discovery and discussed it with defense counsel multiple times.

[2] The government does not concede that the defendant's statement was made without Miranda warnings previously having been provided; however, because there was no joint venture here, the Court need not reach the Miranda issue. See ECF No. 213 at 2-3. For the same reasons, the Court need not reach the issue of whether the defendant was in custody for purposes of Miranda.

B.  Applicable Law

A defendant has no absolute right to an evidentiary hearing on a motion to suppress evidence. See United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005). Rather, a trial court must grant such a hearing only if a movant's affidavit contains specific factual allegations, which, if proven, would warrant the relief requested. See id.; United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on a motion to suppress not required unless the defendant's submissions raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion).

The joint venture doctrine applies to statements where "United States law enforcement agents actively participate in questioning conducted by foreign authorities." United States v. Yousef, 327 F.3d 56, 145 (2d Cir. 2003). The Second Circuit has also "speculated" that the doctrine may apply "where United States officials, although asking no questions directly, use foreign officials as their interrogation agents in order to circumvent the requirements of Miranda." Id. at 146. "Put another way, a joint venture may be found only in circumstances under which the relationship between American and foreign authorities amount to a joint willful attempt to evade the strictures of Miranda or a situation in which United States police officers simply used foreign police officials as instruments in conducting investigation and interviews." United States v. Bary, 978 F. Supp. 2d 356, 367–68 (S.D.N.Y. 2013) (internal citations, quotation marks and ellipses omitted).

C.  Argument

As an initial matter, no hearing is needed on this motion because the defendant's affidavit does not place any material facts in dispute and does not contain specific factual allegations that, if proven, would warrant suppression. The defendant states that there were Americans present at the search. However, he does not state that Americans "actively participate[d]" in questioning him during the search, Yousef, 327 F.3d at 145, or allege any facts suggesting that Bulgarian officers conducting the search were merely being "use[d]" by American agents "to circumvent the requirements of Miranda," id. at 146. In fact, the defendant's sole recollection of his interview is that he recollects nothing: "I do not recollect exactly all conversations that took place."

Furthermore, the undisputed factual record makes plain that there was no joint venture between U.S. and Bulgarian authorities in this case. The Bulgarian search report states that an FBI agent was "[p]resent at the conducted search as an observer and without being part of its execution." Ex. A at 4. The defendant alleges no facts to the contrary in his affidavit. The Bulgarian report further records only a single statement that the defendant made, in a context indicating a routine inquiry incident to the search about which items belonged to the defendant. In addition, the FBI's report shows that after the defendant was arrested and transported to a police station, the FBI sat down with him, provided him with Miranda warnings, and conducted a lengthy interview. Ex. C at 2. Thus, there are is no basis (in fact or even allegation) to suggest that Americans actively participated in questioning the defendant during the search or engaged in a "joint willful attempt to evade the strictures of Miranda." Bary, 978 F. Supp. 2d at 367-68. Instead, the undisputed facts show a statement by the defendant during the search of the defendant's home, followed by a lengthy post-Miranda interview conducted by the FBI. If the

3

Bulgarian officers were merely pawns for U.S. law enforcement (as the defendant confidently asserts a hearing would uncover), one would expect to see the opposite: a lengthy Bulgarian interview, followed by little or no inquiry by American agents.

Faced with this unhelpful record, the defendant bolsters his affidavit with unsupported assertions—stating, for example, that the government told the Bulgarian authorities what questions to ask the defendant. This assertion is not supported by the defendant's personal knowledge, much less by any evidence in the record, and the Court should disregard it. See United States v. Awbrey, No. 14-CR-758, 2015 WL 1020334, at *1 (S.D.N.Y. 2015) ("The requirement of a detailed, non-conclusory and particularized affidavit . . . is not a formality or technical requirement. Before the non-moving party is required to put on its evidence and satisfy its burden of proof, there must be competent evidence from the moving party."). The treaty request that the defendant cites indicates merely that U.S. authorities requested an opportunity to submit proposed questions—there is no indication from the defendant or otherwise that such questions were submitted or asked and, indeed, the undisputed record shows that FBI agents asked their own questions in a lengthy interview after the search. In any event, as set forth below, suggesting questions as part of a treaty request (even if that in fact happened) does not amount to a joint venture.

For the same reason, the Court should reject the defendant's comparison of this case to United States v. Emery (Reply 3-4). In that Ninth Circuit case, the DEA coordinated Mexican police surveillance and provided the undercover agent who flew the defendant's drugs. The defendant's bare affidavit does nothing to indicate similar U.S. involvement in Bulgarian police operations, and his confident assertion that similarities to the facts in Emery are "likely to be developed at a hearing in this case" are neither competent evidence supporting this motion nor derived from any factual basis to which the defendant can point.

The defendant argues that the presence of an MLAT request establishes a joint venture. Not so. It is firmly established that such a request does not indicate United States control of the foreign investigation, nor does it evince an effort to circumvent constitutional requirements. In United States v. Getto, the Second Circuit held in 2013 that Israeli law enforcement agents were not "virtual agents" of U.S. authorities for Fourth Amendment purposes where the United States requested by MLAT that Israeli police conduct searches, and U.S. law enforcement was allegedly permitted to monitor Israeli surveillance. As the panel in Getto observed, "it is not enough" to establish agency "that the foreign government undertook its investigation pursuant to an American MLAT request." United States v. Getto, 729 F.3d 221, 230 (2d Cir. 2013). The panel further found that American reliance on Israeli law enforcement was not aimed at circumventing constitutional requirements, but rather was "motivated by the inability of American law enforcement agents to further investigate criminal activity occurring substantially within the territory of a foreign sovereign." Id. at 233; see Bary, 978 F. Supp. 2d at 367 n.64 (applying Getto in context of Fifth Amendment Miranda claim, and observing that the mere fact that "U.S. authorities are involved in the investigations leading up to or following the interrogation in question" does not establish their direction or control of a foreign investigation).

Similarly, in United States v. Maturo, the Second Circuit found no joint venture where the Drug Enforcement Administration provided Turkish authorities with predication for

4

Turkish wiretaps, funded the wiretaps, provided wiretapping equipment, and received real-time recordings, observing that "the level of cooperation between the DEA and the [Turkish National Police] falls far short of the level needed to find the existence of a joint venture." United States v. Maturo, 982 F.2d 57, 61–62 (2d Cir. 1992). And in Pfeifer v. United States Bureau of Prisons, the Ninth Circuit found that, as a matter of law, there was no joint venture where the defendant alleged that "'an American DEA agent' who had a pistol visible under his jacket was present in the room where Pfeifer was interrogated by Mexican officials." Pfeifer v. United States Bureau of Prisons, 615 F.2d 873, 877 (9th Cir. 1980); see Yousef, 327 F.3d at 145 (citing Pfeifer with approval); Maturo, 982 F.2d at 62 (same); see also United States v. Gasperini, 894 F.3d 482, 489 (2d Cir. 2018) (rejecting Fourth Amendment challenge to search by Italian authorities, and observing that "[b]eyond alleging that the search was conducted at the request of the U.S. government, [] Gasperini does not argue that Italian officials were controlled by American law enforcement agents. A mere request is not sufficient to show control").

In short, the defendant's contention that the United States used Bulgarian officers to interview the defendant in order to avoid complying with Miranda is both legally meritless and belied by the undisputed facts. The defendant's thin affidavit does nothing to raise an issue of material fact warranting a hearing, and this Court should not disturb the settled law that foreign execution of an MLAT inquiry does not give rise to a joint venture. The Court should deny the Motion in full.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By:       /s/
Saritha Komatireddy
Artie McConnell
Alexander F. Mindlin
Assistant United States Attorneys
(718) 254-7000

cc:    Clerk of the Court (EK) (via ECF)
       All counsel of record (via ECF)